IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

| | | |
|---|---|---|
| Lawrence Charles,<br>    Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 1:24-cv-2203 (RDA/WEF) |
| | ) | |
| Pamela Brooks, et al., | ) | |
|     Defendants. | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Lawrence Charles, a Virginia inmate proceeding *pro se*, filed a civil rights action pursuant

to 42 U.S.C. § 1983, alleging that seven state court judges, the clerk of the circuit court, and

Loudoun County, Virginia have violated his constitutional rights. Dkt. No. 1. Because Plaintiff is

a prisoner, the Court must screen his complaint to determine whether it is frivolous, malicious, or

fails to state any claims upon which relief may be granted.[1] Upon review of the complaint, it will

be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief

can be granted.

### I.      Standard of Review

In reviewing a complaint pursuant to § 1915A, a court must dismiss a prisoner complaint

that is frivolous, malicious, or fails to state a claim upon which relief can be granted. 28 U.S.C.

---

[1] Section 1915A of Title 28 U.S.C., provides:

(a) **Screening.**—The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

(b) **Grounds for dismissal.**—On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—

    (1) is frivolous, malicious, or fails to state a claim upon which relief can be granted; or

    (2) seeks monetary relief from a defendant who is immune from such relief.

§ 1915A(b)(1). Whether a complaint states a claim upon which relief can be granted is determined by "the familiar standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *Sumner v. Tucker*, 9 F. Supp. 2d 641, 642 (E.D. Va. 1998). "A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true, and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A plaintiff cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp.*, 550 U.S. at 556). In order for a claim or

2

complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citations omitted). Lastly, while the Court liberally construes *pro se* complaints, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), it will not act as the inmate's advocate and develop, *sua sponte*, statutory and constitutional claims that the inmate failed to clearly raise on the face of his complaint. *See Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## II.    Complaint

Plaintiff alleges that the nine Defendants (Judge Pamela Brooks, Juvenile and Domestic Relations District Court of Loudoun County; Loudoun County Circuit Court Judges: James Fisher; Robert Smith; Douglas Fleming; Stephen Sincavage; Matthew Snow; substitute Judge Alfred D. Swersky; Gary Clemmons, Loudoun County Circuit Court Clerk; and Loudoun County) conspired to retaliate against him for filing a complaint with the Judicial Inquiry and Review Commission ("JIRC") against Defendant Brooks. Plaintiff also alleges that Defendants are interfering with his federal lawsuits, but he does not allege so on the basis of any facts but only upon "information and belief." Dkt. No. 1 at 5. Plaintiff also alleges that he is the victim of unnamed Loudon County law enforcement officials because he has "called them out," "for using unconstitutional practices and procedures against mainly African American males." *Id.*

On February 2, 2023, Plaintiff filed a civil action against Loudoun County Detective Lorraine Goldberg and others alleging that they deprived Plaintiff of his rights. *Charles v. Wozniak et al.*, No. 1:23-cv-00154-CMH-JFA. He alleges that he was arrested on December 11, 2023, and charged with malicious wounding, strangulation, and abduction. On December 31, 2023, however,

3

the complaining witness sent a message to Plaintiff stating that she had lied about the incident. Loudoun County prosecutors and law enforcement officers were aware of the message.

On January 25, 2024, Defendant Brooks presided over Plaintiff's bond motion and Plaintiff alleges that Defendant Brooks interrupted defense counsel's argument to correct his factual statement that Plaintiff had never failed to appear because Plaintiff's record indicated that he had failed to appear, and denied bond without the prosecutor having to argue. Plaintiff appealed the denial of his bond and alleges that Defendant Snow should have recused himself from hearing the bond appeal because Plaintiff had written articles about Defendant Snow's business partner and friend, Buta Biberis. Despite learning about the victim's recantation, Defendant Snow denied Plaintiff's bond. *Id.*

After the denial of bond, Plaintiff filed a complaint against Defendants Snow, Brooks, the Commonwealth Attorney's Office, and the Loudoun County Sheriff's with the JIRC. At Plaintiff's preliminary hearing on April 10, 2023, Defendant Brooks had private communications and passed advice to the prosecutor via her laptop. Defendant Brooks also overruled Plaintiff's counsel's objection that notes were being passed by "other attorneys" to the prosecutor. Although Defendant Brooks was also made aware of the victim's recantations and the victim testified that she had lied about the Plaintiff abducting, strangling, and assaulting her, Defendant Brooks found probable cause. *Id.* at 6-7. The grand jury met on May 20, 2023, and only one witness, Detective Katie Marshall, appeared. Marshall allegedly did not inform the jury of the victim's recantation so that her friend, Detective Goldberg, would have an advantage in a civil action that Plaintiff had filed against her in federal district court. Plaintiff then filed a civil action against Marshall in federal district court, *Charles v. Anderson et al*, No. 1:24-cv-01095-RDA-IDD.[2]

---

[2] The complaint mischaracterizes the purpose of a preliminary hearing and a grand jury,

The victim's lawyer, who was allegedly working with the prosecutors and having a sexual relationship with the victim, advised her to seek a protective order against Plaintiff on July 9, 2024. The victim filed for a protective order while the prosecutors covered up the victim's affair. *Id.* at 7. On July 11, 2024, Plaintiff was served with a motion seeking to admit the recanted statements, and stating that Plaintiff had induced the victim to commit perjury. *Id.* Defendant Brooks issued the protective order on July 24, 2024. Plaintiff was present and stated to Defendant Brooks that the victim had committed perjury, to which Defendant Brooks replied that did not matter. *Id.* at 8.

On July 25, 2024, Defendant Fisher heard the motion to admit the recanted statement. Plaintiff had written a letter to Defendant Fisher the previous year indicating that Defendant Fisher was a racist, cheated minorities, was unfair, and "very partial to prosecutors" with whom he made secret deals. *Id.* at 8. Plaintiff, having fired his defense counsel, proceeded *pro se* at the hearing. Defendant Fisher ordered Plaintiff be placed in three-point restraints. The complaint alleges that the prosecutor presented evidence, which was mostly various communications (emails, phone

---

both of which determine only probable cause and not guilt or innocence. A prosecutor is not required to introduce exculpatory evidence in a grand jury proceeding because a grand jury sits to determine if there is probable cause to support an indictment, and not guilt or innocence. *United States v. Williams*, 504 U.S. 36, 51 (1992) ("It is axiomatic that the grand jury sits not to determine guilt or innocence, but to assess whether there is adequate basis for bringing a criminal charge."). Indeed, "[a] grand jury investigation is not an adversarial process. For all practical purposes the prosecution directs the proceedings, and potential indictees have no ability to correct inadvertent or deliberate distortions during the grand jury's fact-finding process. *United States v. Jones*, 160 F.3d 641, 646 (1998) (citing *United States v. Sells Engineering, Inc.*, 463 U.S. 418, 430 (1983); *Williams*, 504 U.S. at 47-55). Further, "the law does not require that a prosecutor explore every potentially exculpatory lead before filing a criminal complaint or initiating a prosecution. 'The reasonable belief which constitutes probable cause does not require [a prosecutor] to evaluate the totality of circumstances both inculpatory and exculpatory, as a trier of fact guided by a reasonable doubt standard.'" *Trabal v. Wells Fargo Armored Serv. Corp.*, 269 F.3d 243, 251 (3d Cir. 2001) (citation omitted). Importantly, consistent with the non-adjudicatory role of preliminary hearings and grand jury proceedings, there is no due process violation as long as exculpatory "material is disclosed to a defendant in time for its effective use *at trial*." *United States v. Smith Grading & Paving, Inc.*, 760 F.2d 527, 532 (4th Cir. 1985) (emphasis added).

calls) Plaintiff had sent to the victim. The prosecutor's presentation was replete with lies and misrepresentations. Plaintiff was only given two minutes to respond to the prosecutor's argument. Defendant Fisher was bias.

Plaintiff was heard on September 20, 2024, via T.V., on his motion to recuse the lawyer who had allegedly had sex with the victim. Defendant Fisher presided, informed Plaintiff that he had read the motion, and asked Plaintiff if he had anything else to say, to which Plaintiff asked where the Court reporter was. Defendant Fisher concluded the proceeding and directed the lawyer to prepare an order. *Id.* 9-10.

Plaintiff had been proceeding *pro se* since June 2024, and alleges that he was provided with discovery in digital format while detained at the Alexandria Jail and was not allowed to review it. Plaintiff filed a motion to compel discovery, which was heard on September 26, 2024. Plaintiff argued that the prosecutors had denied him exculpatory evidence because they knew he was incarcerated and provided the discovery in a format he could not access. The prosecutor responded by telling Defendant Fisher that Plaintiff had not asked the Alexandria Jail[3] for access to his discovery material, and Defendant Fisher, without providing Plaintiff an opportunity to respond, denied the motion. *Id.* at 10.

On October 17, 2024, Defendant Swersky heard the motion to admit the recantation. Plaintiff informed Defendant Swersky that he needed more than the five minutes allotted for his motion. Defendant Swersky had read his motion and asked Plaintiff how his present motion was different from his previous motions. Plaintiff replied it was because he was seeking "to not admit the hearsay," and his motion was denied. *Id.* at 10.

---

[3] Plaintiff has also filed a civil suit against Alexandria Jail officials. *Charles v. Casey*, No. 1:24cv1799-RDA-LRV (E.D. Va.).

The complaint then alleges on information and belief that the prosecutor's office and sheriff's office were retaliating against Plaintiff and interfering with JIRC's investigation; and conspiring with other County officials and judges in retaliation to Plaintiff filing other federal lawsuits. *Id.* at 10-11. The complaint then shifts its focus from Plaintiff to others stating that Defendants were "doing favors for their friends and associates in other criminal case[s]" filed in Loudoun County courts; the judges act as prosecutors instead of judges; the defendants alter or destroy transcripts and other records; the defendants misrepresent facts; and the defendants use their laptops for *ex parte* communications during trials. All of these incidents of improper conduct are institutionalized and ratified by all of the defendants. *Id.* at 11-12.

Plaintiff seeks an order to investigate the Loudon prosecutors and its sheriff's office; for this Court to monitor the Loudoun County courts; to identify and re-open cases of Defendants that sought to recuse judges; and for the public to be aware of the alleged misconduct.

### III. Judicial Immunity

Although Plaintiff does indicate specific acts or omissions on behalf of some of the seven judges he named as defendants, he has not identified any specific actions on the part of Defendants Smith, Fleming, and Sincavage. Nevertheless, Plaintiff alleges that the Defendant judges use their judicial authority improperly, but does not allege that any of the judges acted without jurisdiction. To be sure, the specific allegations of improper use involve only judicial proceedings—bond motions, a preliminary hearing, discovery matters, pre-trial motions on the admissibility of evidence and recusal, and a protective order. Plaintiff's allegations do not state a claim against any of the seven judges because judges are immune from suits for damages arising out of their judicial acts[4] as well as injunctive relief. *See Donato Malave v. Abrams*, 547 F. App'x 346, 347 (4th Cir.

---

[4] It is well settled that judges are absolutely immune for suits for damages arising out of

2013) (Congress abrogated the limiting of judicial immunity for state judges for only money damages by amending § 1983 in 1996 and provided that "injunctive relief [against a judicial officer] shall not be granted unless a declaratory decree was violated, or declaratory relief was unavailable.");[5] *Roth v. King*, 449 F.3d 1272, 1286, (D.C. Cir. 2006) (same). Thus, even if Plaintiff were allowed to particularize and amend his complaint, such efforts would prove futile because, under any set of facts, the defendant judges may not be held liable in a claim under 42 U.S.C. § 1983. *See Mireles v. Waco*, 502 U.S. 9, 11 (1991) ("judicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial").[6] Each of the seven judges will be dismissed with prejudice from this civil Action.

### IV. Clerk Immunity

"Court clerks are also accorded derivative judicial absolute immunity when they act in obedience to a judicial order or under the court's direction." *Battle v. Morrison*, 139 F.3d 887 (4th Cir. 1998). The Eighth Circuit has held that

> Clerks of court "have absolute immunity from actions for damages arising from acts they are specifically required to do under court order or at a judge's direction." *See, e.g.*, *McCaw v. Winter*, 745 F.2d at 534; *Tarter v. Hury*, 646 F.2d at 1013. Here, all of the acts of the state circuit judges and the assistant prosecutors that Rogers alleged were unconstitutional were acts performed within the scope of their official authority. Similarly, the deputy circuit clerk issued the arrest warrant at the direction of the assistant circuit judge.

---

their judicial acts. *Pierson v. Ray*, 386 U.S. 547, 554-55 (1967).

[5] Prior to the amendment of the statute, the Supreme Court had held that "judicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in her judicial capacity." *Pulliam v. Allen*, 466 U.S. 522, 541-42 (1984).

[6] *Mireles* recognized two exceptions to the long line of cases recognizing absolute judicial immunity—"actions not taken in the judge's judicial capacity" and "actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Id.* at 11-12. The actions alleged do not involve either exception.

*Rogers v. Bruntrager*, 841 F.2d 853, 856 (8th Cir. 1988); *see also McCray v. Maryland*, 456 F.2d 1, 5 (4th Cir. 1972) (observing that the law provides immunity for those whose actions are taken "in obedience to a judicial order or under the court's direction").

Here, Plaintiff has not alleged any specific act or omission on the part of the Defendant Clemens. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true."); *see also West v. Atkins*, 487 U.S. 42, 48 (1988) ("To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."); *see Barren v. Harrington*, 152 F.3d 1193, 1194-95 (9th Cir. 1998) ("A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights."); *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978) (discussing "requisite causal connection" in § 1983 cases between named defendant and claimed injury). Further, as Clerk, Defendant Clemmons has no authority to order the relief Plaintiff requested.

The complaint does not state a claim upon which relief can be granted, and Defendant Clemens will be dismissed without prejudice.

### V. Loudoun County

The Fourth Circuit has observed that a county, like other governmental entities, can be sued pursuant to § 1983 "for violations of constitutional rights," *Dotson v. Chester*, 937 F.2d 920, 924 (4th Cir. 1991) (citing *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 690

(1978); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 n.12 (1986)), but "[t]he violation, however, must bear some relation to the county's "policy or custom." *Id.* (citing *Monell*, 436 U.S. at 690-91; *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 n.1 (1988)).

> First, . . . municipalities may be held liable under § 1983 only for acts for which the municipality itself is actually responsible, "that is, acts which the municipality has officially sanctioned or ordered." Second, only those municipal officials who have "final policymaking authority" may by their actions subject the government to § 1983 liability. Third, whether a particular official has "final policymaking authority" is a question of state law. Fourth, the challenged action must have been taken pursuant to a policy adopted by the official or officials responsible under state law for making policy in that area of the city's business.

*Dotson*, 937 F.2d at 924. "At the very least there must be an affirmative link between the policy and the particular constitutional violation alleged." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985).

In this instance, Plaintiff has failed to identify a specific government policy, or otherwise satisfy the four requirements of *Praprotnik*. Loudoun County does not have any specified authority over state court judges or the clerk of the circuit court—the only named defendants that could have acted pursuant to a policy. Further, Plaintiff has not identified a policy and linked it to any specific constitutional violation of Plaintiff's rights.

Because Plaintiff is a prisoner, he will be allowed leave to amend his complaints to address the deficiencies noted herein.

Finally, to the extent that Plaintiff seeks to contest the fact or duration of his confinement, he must pursue such remedies through a petition for a writ of habeas corpus, not a claim under 42 U.S.C. § 1983. *See Preiser v. Rodriguez*, 411 U.S. 475, 487 (1973); *see generally Wilkinson v. Dotson*, 544 U.S. 74, 78-82 (2005) (summarizing the distinctions between § 1983 and habeas actions).

## IV. Conclusion

Accordingly, for the foregoing reasons, it is hereby

**ORDERED** that the complaint be and is **DISMISSED WITHOUT PREJUDICE**, to allow Plaintiff to file an amended complaint in compliance with the requirements of this order; and it is

**FURTHER ORDERED** that Judge Brooks, Judge Fisher, Judge Smith, Judge Fleming, Judge Sincavage, Judge Snow, and Judge Swersky be and are **DISMISSED WITH PREJUDICE**; and it is

**FURTHER ORDERED** that Plaintiff particularize and amend his Complaint within thirty (30) days of the date of this Order using the enclosed standardized §1983 complaint form by (i) naming every person he wishes to include as a defendant, (ii) identify each claim he seeks to raise by letter or number, (iii) submitting a short, detailed statement of background facts which describes the specific conduct of each defendant whom he alleges violated his constitutional rights, including the facts giving rise to his complaint, the dates of each incident, the persons involved, the reasons why he believes each defendant is liable to him, the remedies sought, and (iv) curing the deficiencies noted herein. Plaintiff must reallege all the facts from the original complaint in the amended complaint, and he must include his civil action number, **1:24cv2203 (RDA/WEF)**, on the first page of his amended complaint. Plaintiff is advised that this amended complaint will serve as the sole complaint in this civil action; and it is

**FURTHER ORDERED** that Plaintiff's failure to comply with any part of this Order within thirty (30) days from the entry of this Order, or failure to notify the Court immediately upon being transferred, released, or otherwise relocated, may result in the dismissal of this complaint pursuant to Federal Rule of Civil Procedure 41(b).

The Clerk is directed to send a copy of this Order and a § 1983 form and a § 2254 form to Plaintiff.

Entered this _____5_____ day of _____February_____ 2025

Alexandria, Virginia

_____ /s/

Rossie D. Alston, Jr.
United States District Judge

12